IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:12-CV-129-D

| | | |
|---|---|---|
| JUDY PIERCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, plaintiff Judy Pierce ("plaintiff") challenges the final decision of defendant Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability benefits ("DIB") on the grounds that she is not disabled. The case is before the court on the parties' respective motions for judgment on the pleadings. (D.E. 23, 25). Both parties submitted a memorandum in support of their respective motions (D.E. 24, 26). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* D.E. 27). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the Commissioner's final decision be affirmed.

I.     **BACKGROUND**

A.     **Case History**

Plaintiff filed an application for DIB on 11 May 2010 alleging a disability onset date of 16 April 2010. Transcript of Proceedings ("Tr."), *e.g.*, 20. Her application was denied initially and a request for hearing was timely filed. Tr., *e.g.*, 20. On 11 July 2011, a hearing was held before an Administrative Law Judge ("ALJ") in western Pennsylvania, where plaintiff was

apparently residing at the time. *See* Tr. 20 (location of hearing), 36-67 (transcript of hearing). The ALJ issued a decision denying plaintiff's claim on 2 September 2011. Tr. 20-30. Plaintiff timely requested review by the Appeals Council. Tr. 15. The Appeals Council admitted additional evidence (Tr. 6-7), records of an inpatient hospital stay by plaintiff in December 2010 (D.E. 840-68); found that such evidence "does not contain clinical or laboratory information, which would support changing the decision in this case" (Tr. 2); and denied the request for review on 16 March 2012 (Tr. 1). At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 404.981. After moving to North Carolina, plaintiff commenced this proceeding for judicial review on 17 May 2012, pursuant to 42 U.S.C. § 405(g). (*See In Forma Pauperis* Mot. (D.E. 1); Order Allowing Mot. (D.E. 4); Compl. (D.E. 5) 1 & 1 ¶ 4).

## B. Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* (d)(3). A person is under a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* (d)(2)(A).

The disability regulations under the Act ("Regulations") provide the following five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R. § 404.1509], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["listings"] and meets the duration requirement, we will find that you are disabled. . . .

(iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545-46 (3d Cir. 2003)[1]; *accord Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Newell,* 347 F.3d at 546; *accord Pass*, 65 F.3d at 1203.

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such

---

[1] As discussed in detail in section II.A. below on choice of law, the court is citing Third Circuit authority because the administrative hearing in this case was held there, and Third Circuit precedent therefore governs review of the ALJ's decision.

impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

## C.  Findings of the ALJ

Plaintiff was 44 years old on the alleged onset date of disability and 45 years old on the date of the administrative hearing. *See* Tr. 28 ¶ 7. She has a high school education and prior work as an accounts receivable manager, accounts payable manager, senior transaction specialist, and bank teller. Tr. 28 ¶¶ 6, 8; 41.

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ made the finding at step one that plaintiff had not engaged in substantial gainful activity during the period from her alleged disability onset date of 16 April 2010 through the date of the decision. Tr. 22 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments which were severe within the meaning of the Regulations, 20 C.F.R. § 404.1520(c): history of congestive heart failure; obesity; mild pulmonary hypertension; patent foramen ovale ("PFO")[2]; hypertension; fibromyalgia; hypercholesterolemia; seizure disorder; migraine headaches; prothrombin gene mutation; chronic obstructive pulmonary disease ("COPD"); myalgia and myositis not otherwise specified; history of deep vein thrombosis ("DVT"), cerebrovascular accident ("CVA"), and transient ischemic attack ("TIA"); and depression. Tr. 22 ¶ 3. At step three, the ALJ found that plaintiff's impairments did not meet or medically equal any of the listings, including specifically Listing 3.03B for asthma attacks. Tr. 22-23 ¶ 4.

---

[2] PFO can be defined as "a hole between the left and right atria (upper chambers) of the heart that fails to close naturally soon after a baby is born." Def. of "Patent Foramen Ovale," *A.D.A.M. Medical Encycl.*, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0002102/ (last visited 5 June 2013).

The ALJ determined that plaintiff had the RFC to perform sedentary work,[3] subject to the following limitations: occasional climbing of ramps and stairs, but no climbing of ropes, ladders, or scaffolds; occasional balancing, stooping, and crouching, but no kneeling or crawling; no exposure to extreme heat or cold, wetness, humidity, smoke, fumes, odors, or gases; no exposure to hazards such as heights or machinery; performance of only simple, routine, repetitive tasks; and limitation to simple work-related decisions. Tr. 24-25 ¶ 5.

Based on this RFC, the ALJ found at step four that plaintiff was not capable of performing her past relevant work. Tr. 28 ¶ 6. At step five, the ALJ accepted the testimony of a vocational expert ("VE") and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including order clerk, addressor/mail sorter, and table worker. Tr. 29 ¶ 10. The ALJ accordingly concluded that plaintiff was not disabled. Tr. 29 ¶ 11.

## II.    DISCUSSION

### A.    Choice of Law

The Act provides that any action for judicial review of a final decision of the Commissioner "shall be brought in the district court of the United States for the judicial district in which the plaintiff resides." 42 U.S.C. § 405(g). In this case, venue lies in this court because plaintiff alleges in her complaint that she is a resident of Onslow County, which is within this district. *See* (Compl. 1 ¶ 4); 28 U.S.C. § 113(a). Nevertheless, because the hearing before the ALJ was held in the Western District of Pennsylvania, which lies within the Third Circuit, the

---

[3] The definition of sedentary work in the Regulations reads: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a); *see also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "S-Sedentary Work," http://www.oalj.dol.gov/libdot htm (last visited 5 June 2013). "Sedentary work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. § 404.1567.

standards prevailing in that circuit control the merits of the review of the ALJ's decision. *See Mannella v. Astrue*, No. CV 06-469-TUC-CLK (BPV), 2008 WL 2428868, at *15 (D. Ariz. 20 Feb. 2008) (mag. judge's rep. & recommendation) (applying law of 10th Cir. to review of ALJ's decision since hearing held there, rather than law of 9th Cir. where district court is located), *adopted in part and rejected in part on other grounds*, 2008 WL 2428869 (12 June 2008) (adopting choice of law ruling at *1).[4] The court will therefore cite to precedent from the Third Circuit in its analysis. For informational purposes, the court will also cite to Fourth Circuit precedent as appropriate.[5]

## B. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *accord Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986).

Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Id.* at 401; *Thomas v. Comm'r of Soc. Sec.*, 625 F.3d 798, 800 (3d Cir. 2010).

---

[4] While affirming that the law of the circuit where the ALJ hearing was held governed review of the ALJ's decision, the district court held that the law of the circuit where the district court was sitting would govern its review of the magistrate judge's report and recommendation. *See Mannella*, 2008 WL 2428869, at *1.

[5] In their memoranda, the parties did not address the choice of law issue presented and apparently assumed that Fourth Circuit precedent controlled review of the ALJ's final decision.

This standard does not permit the court to substitute its own conclusions for those of the Commissioner. *See Burns v. Barnhard*, 312 F.3d 113, 118 (3d Cir. 2002); *accord Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam).

Where, as here, evidence is introduced for the first time at the Appeals Council level, the district court should remand the case to the Commissioner, pursuant to sentence six of 42 U.S.C. § 405(g), if the evidence is new and material, and good cause is shown for not having submitted the evidence earlier. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001); *see also Szuback v. Sec. of Health and Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984). Evidence is new if it is not cumulative of preexisting evidence. *Allhouse v. Astrue*, Civ. Act. No. 12-1675, 2013 WL 1683608, at *1 n.1 (W.D. Pa. 17 Apr. 2013); *Hanson v. Astrue*, Civ. Act. No. 12-84, 2013 WL 1631389, at *8 (W.D. Pa. 16 Apr. 2013). Evidence is material if it is "'relevant and probative' and there is a reasonable possibility that the new evidence would have changed the outcome of the ALJ's decision." *Hanson*, 2013 WL 1631389, at *8 (quoting *Szuback*, 745 F.2d at 833).

If remand is not warranted, the district court must review the Commissioner's decision "based on the record that was made before the ALJ." *Matthews*, 239 F.3d at 593. Thus, "evidence that was not before the ALJ cannot be considered by a district court in its determination of whether or not the ALJ's decision was supported by substantial evidence." *Allhouse*, 2013 WL 1683608, at *1 n.1. *Contra Felts v. Astrue*, No. 1:11CV00054, 2012 WL 1836280, at *1 (W.D. Va. 19 May 2012) ("[T]he court must 'review the record as a whole, including the new evidence [submitted to the Appeals Council], in order to determine whether substantial evidence supports the Secretary's findings.'" (quoting *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir.1991))); *see also Matthews*, 239 F.3d at 589 (noting split in circuits).

### C. Absence of Need for Remand

The threshold issue presented is whether this case must be remanded for consideration of the additional evidence submitted by plaintiff for the first time to the Appeals Council. The additional evidence consists of records of plaintiff's inpatient stay at Punxsutawney Area Hospital from 7 to 10 December 2010 (*see* Tr. 840-68). The court finds that remand is not required.

While this evidence is not cumulative of preexisting evidence and therefore appears to meet the requirement of being new for purposes of remand, it is not material because there is not a reasonable possibility that it would have changed the outcome of the ALJ's decision. Among other reasons, the ALJ was aware of this hospital stay, even though he lacked records of it. Plaintiff testified to the stay at the hearing. Tr. 61-62. In addition, her counsel discussed it in a letter he submitted to the ALJ dated 25 July 2011, after the hearing but before the ALJ's decision. Tr. 218-19. In that letter, as well as her memorandum, plaintiff contends that the stay substantiates that plaintiff has disabling asthma and, specifically, that the ALJ should have found that plaintiff met Listing 3.03B on asthma attacks (a contention addressed in detail below).

But the records of the December 2010 hospitalization indicate that it was prompted, in large part, by conditions other than the impairments of which plaintiff complains—namely, nausea, vomiting, and diarrhea (in addition to chest pain). *See* Tr. 846. Plaintiff herself concedes in her memorandum that she "was not hospitalized at Punxsutawney Area Hospital primarily because of an asthma attack." (Pl.'s Mem. 4 n.1).

Moreover, of the five references to asthma in the December 2010 records, four appear as part of plaintiff's past medical history. Tr. 845, 846, 849, 866. The other reference is among 11 impressions of a physician relating to plaintiff's condition on the day of her admission to the

hospital, 7 December 2010. Tr. 850-51. The discharge summary lists four diagnoses for plaintiff, none of which is for asthma. Tr. 856.

Further, the records of this stay are the only records among those relating to plaintiff's four hospital stays during the alleged period of disability that even mention asthma. This hospitalization alone, even if deemed to have been necessitated by asthma, would not establish the frequency of asthma attacks required by Listing 3.03B. *See* Listing 3.03B; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.").

The record also fails to establish good cause for plaintiff's not submitting the records of the December 2010 hospital stay earlier. The records appear clearly to have been available before the hearing, which was held in July 2011, over six months after the hospital stay. Plaintiff did not ask at the hearing for additional time to submit the records, although she did request additional time to submit other records. Tr. 39. The December 2010 hospital records are not even mentioned in the 25 July 2011 letter on plaintiff's behalf to the ALJ. *See* Tr. 218-19. The records were finally submitted with the letter brief to the Appeals Council dated 3 January 2012 (Tr. 220-22), more than a year after the December 2010 hospital stay. The only explanation for the tardy submission appears in a brief parenthetical at the end of the listing of plaintiff's four hospital stays: "[S]he had four impatient admissions in 2010 [including] . . . . Punxsutawney Area Hospital from 12/7/10-12/12/10 (copies are attached hereto, as counsel was unable to locate these records, which are believed to have been previously submitted)." Tr. 221. No justification

is offered for the alleged inability to locate the records and belief that they had previously been submitted.[6]

Thus, because the records of the December 2010 hospital stay have not been shown to be material and good cause has not been shown for the failure to submit them earlier, remand of this case is not warranted. The court will accordingly proceed to evaluate the lawfulness of the ALJ's decision based on the record before the ALJ and thereby without consideration of the records of the December 2010 hospital stay.

### D.  Overview of Plaintiff's Contentions

Plaintiff contends that the ALJ erred with respect to his: (1) determination on Listing 3.03B; (2) consideration of plaintiff's testimony; (3) evaluation of plaintiff's credibility; (4) assessment of plaintiff's mental impairments; and (5) hypothetical to the VE. Each ground is examined in turn below.

### E.  ALJ's Determination on Listing 3.03B

Listing 3.03B establishes criteria for both the frequency and severity of asthma attacks. With respect to frequency, the attacks must "occur[] at least once every 2 months or at least six times a year. Each in-patient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks." Listing 3.03B.

As for severity, the attacks must occur "in spite of prescribed treatment and requir[e] physician intervention." *Id.* In addition, the attacks must be

---

[6] Any incompetence by plaintiff's attorney at the time in not submitting the records earlier is not a basis for good cause. *See Taylor v. Comm'r of Soc. Sec.*, 43 F. Appx 941, 943 (6th Cir. 2002) ("[T]here is absolutely no statutory or decisional authority for [the claimant's] unstated, but unmistakable, premise that the alleged incompetence of [the claimant's] first attorney constitutes 'good cause' in this context."); *Brown v. Astrue*, No. 3:11–cv–331, 2012 WL 3112367, at *5 n.5 (S.D. Ohio 31 July 2012) ("[A] previous attorney's errors do not establish good cause to obtain a Sixth Sentence remand." (citing *Taylor*, 43 Fed. Appx at 943)), *adopted*, 2012 WL 3779626 (31 Aug. 2012).

prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting. Hospital admissions are defined as inpatient hospitalizations for longer than 24 hours. The medical evidence must also include information documenting adherence to a prescribed regimen of treatment as well as a description of physical signs. For asthma, the medical evidence should include spirometric results obtained between attacks that document the presence of baseline airflow obstruction.

Listing 3.00C.

Plaintiff contends that she met the listing because she had the equivalent of eight asthma attacks in 2010 based on four inpatient hospitalizations between April and December 2010—at Dubois Regional Medical Center ("Dubois") from 16 to 18 April 2010 (*see* Tr. 254-59, 261-314); Dubois from 11 to 13 May 2010 (*see* Tr. 503-12, 529-38); Allegheny Central Hospital from 28 to 30 July 2010 (*see* Tr. 594-607); and, of course, Punxsutawney Area Hospital from 7 to 10 December 2010. The ALJ found, however, that plaintiff's attacks did not meet the listing since "by [her] own admission the duration was only 8 months." Tr. 23 ¶ 4. Plaintiff argues that this finding is legally erroneous. The court agrees, but finds that the error is harmless.

By finding plaintiff's attacks insufficient for spanning eight months, the ALJ appears to have interpreted the listing as requiring that they last "at least 12 consecutive months." Listing 3.03B. But the 12 consecutive month period specified in the listing is not a durational requirement; the listing does not state that the attacks must occur over this period. Rather, the 12 consecutive month period is the period for measuring the frequency of the attacks. "This twelve-month requirement is only to be employed 'to determine the frequency of the attacks,' however, and should not be read, as the Commissioner suggests, to require a claimant to suffer from a condition for twelve months before being declared disabled." *Lemoi v. Chater*, No. CA 95-0353H, 1996 WL 134247, at *4 n.2 (D.R.I. 18 Mar. 1996) (quoting Listing 3.03B). Therefore,

the fact that an individual's attacks occurred over a period of less than 12 months does not in itself preclude satisfaction of Listing 3.03B. *See, e.g., A.O.D. v. Astrue*, Civ. Act. No. WGC–09–2757, 2010 WL 4904463, at *8-9 (D. Md. 24 Nov. 2010) (holding that five attacks in a ten-month period were "qualifying" attacks under Listing 3.03B); *Riley v. Barnhart*, No. Civ.A. 03-0288, 2004 WL 2423840, at *5 & n.12 (E.D. La. 28 Oct. 2004) (holding that the frequency requirement of Listing 3.03B was met where claimant had 6 attacks in a 10-month period and 6 attacks in a different 11-month period); *Lemoi*, 1996 WL 134247, at *4 n.2 (holding that the frequency requirement of Listing 3.03B was satisfied where attacks spanned five months). *Contra Blackwell v. Barnhart*, No. 01 C 5170, 2002 WL 1821741, at *3 (N.D. Ill. 8 Aug. 2002) (holding that the frequency requirement of Listing 3.03B was not met where "the medical evidence showed attacks spanning a period only five months").

The ALJ's error is harmless, in part, because the ALJ gave additional reasons for his determination on Listing 3.03B, which plaintiff incorrectly asserts he did not, and these reasons are legally sufficient. Specifically, the ALJ explained that plaintiff did not meet (or equal) any listings, necessarily including Listing 3.03B, because the state agency medical consultants did not find that she met or equaled any of them. Tr. 23 ¶ 4. As represented by the ALJ, the consultant report relevant to Listing 3.03B—the 31 August 2010 physical RFC assessment by Paul Fox, M.D. —did not find plaintiff to meet any listing. *See* Tr. 695-701. The court finds that this determination by Dr. Fox is supported by substantial evidence.

The ALJ also found that plaintiff did not meet or equal any listings because the record is bereft of an opinion from a treating or examining medical source that plaintiff met or equaled a listing. Tr. 23 ¶ 4. Plaintiff points to no such opinion, and the court has not located one either. Therefore, again, the ALJ's characterization of the record is accurate.

The ALJ's determination regarding Listing 3.03B finds other support in the record. As indicated, Listing 3.00C provides that "the medical evidence should include spirometry results obtained between attacks that document the presence of baseline airflow obstruction." Listing 3.00C. Here, a pulmonary function test performed on 30 April 2010 showed plaintiff not to have significant expiratory airflow obstruction, but instead "[n]ormal simple spirometry." Tr. 349.

The court concludes that the ALJ committed no reversible error with respect to his determination regarding Listing 3.03B. The court accordingly rejects plaintiff's challenge to this portion of the ALJ's decision.

### F.     ALJ's Consideration of Plaintiff's Testimony

Plaintiff argues that the ALJ failed to adequately consider her testimony. She bases this contention on the fact that the ALJ did not summarize her testimony in his decision and purportedly did not address several specific matters about which she testified. The contention has no merit.

There is, of course, no requirement that an ALJ summarize a claimant's testimony in his decision. Further, "'[a]n ALJ is not required to make specific comment concerning all of the evidentiary matter before him . . . .'" *Di Gregorio v. Astrue,* No. 10–3509 (MLC), 2011 WL 3625134, at *6 (D.N.J. 12 Aug. 2011) (quoting *Grohoske v. Apfel*, 17 Fed. Appx. 893, 895 (10th Cir. 2001))); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam); *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989); *accord Best v. Astrue*, No. 5:06-CV-301-D, 2008 WL 64687, at *3 (E.D.N.C. 3 Jan. 2008).

The ALJ here repeatedly stated that he considered all the evidence, which would necessarily include plaintiff's testimony. Tr., *e.g.*, 20 ("After careful consideration of all the evidence . . . ."); 22 ("After careful consideration of the entire record . . . ."); 24 ¶ 5 ("After

careful consideration of the entire record . . . ."). He also said expressly that he "evaluated [plaintiff's] testimony," as well as her demeanor at the hearing, in considering her credibility. Tr. 27 ¶ 5. As to her allegations of depression, he found that "she testified credibly at the hearing." Tr. 27 ¶ 5. The ALJ also expressly cited to "Testimony" in discussing plaintiff's activities of daily living. Tr. 23 ¶ 4.

The ALJ additionally cited repeatedly to plaintiff's 20 July 2010[7] function report (*i.e.*, Ex. 4E, Tr. 190-204) and 8 October 2010 disability report (*i.e.*, Ex. 6E, Tr. 207-12) which set out many of the same allegations she asserts in her testimony. *See* Tr., *e.g.*, 23 ¶ 4 (citing Ex. 4E); 24 ¶ 4 (citing Ex. 6E); 25 ¶ 5 (citing Exs. 4E & 6E); 27 ¶ 5 (citing Ex. 4E); 28 ¶ 5 (citing Ex. 6E). Moreover, the ALJ conducted most of the examination at the hearing; his questioning consumed all but about 7 of the 28 pages of witness examination in the hearing transcript. *See* Tr. 39-56, 62-65, 66. The hearing was held less than two months before the ALJ issued his decision.

Plaintiff complains that the ALJ did not mention her use of oxygen, about which she testified at the hearing (*see* Tr. 49, 61). But he did: "The [ALJ] observed the claimant used oxygen at the hearing." Tr. 23 ¶ 4. In fact, it was the ALJ who elicited her testimony that she used oxygen 24 hours a day (*see* Tr. 49), although her counsel asked a follow-up question about it (*see* Tr. 61).

Further, in his decision the ALJ mentioned plaintiff's shortness of breath when discussing the records of her treating cardiologist. Tr. 26 ¶ 5. The ALJ also referred to plaintiff's allegations of shortness of breath and such purported resulting limitations as difficulty climbing stairs in discussing plaintiff's 8 October 2010 disability report (*i.e.*, Ex. 6E). Tr. 25 ¶ 5. In that

---

[7] While the date given on the first page of the report is 13 July 2010 (Tr. 190), plaintiff dated her signature 20 July 2010 (Tr. 197).

report, she says she uses oxygen 24 hours a day and such use has a limiting effect on her. Tr. 207 ¶¶ A, B. To accommodate plaintiff's shortness of breath and other impairments, the ALJ did not adopt the opinion of Dr. Fox that she could perform work at the light exertional level but, as indicated, found she was limited to sedentary work. *See* Tr. 25 ¶ 5. The ALJ explained:

> The [ALJ] finds the longitudinal medical evidence supports a reduction to sedentary work with accommodations for her respiratory impairments; but in all other respects, this opinion has been the basis for the above-stated residual functional capacity.

Tr. 25 ¶ 5.

Plaintiff claims the ALJ ignored her testimony about constant and worsening pain in her lower back and hips. *See* Tr. 48-49. But he expressly referred to her "allegations of chronic pain" in pointing out the absence of any aggressive treatment for it. Tr. 28 ¶ 5.

Plaintiff also contends that the ALJ did not mention her COPD, about which she testified (*see* Tr. 56), after step two of the sequential analysis, at which he found it a severe impairment. In fact, though, his listing determination at step three encompasses all of plaintiff's impairments (Tr. 22 ¶ 4); in formulating plaintiff's RFC determination, he noted that she required "accommodations for her respiratory impairments" (Tr. 25 ¶ 5); at step four, he included such limitations in her RFC (Tr. 24-25 ¶ 5); and at step five, he included the same limitations in the hypothetical to the VE (Tr. 63, 64).

Plaintiff acknowledges that the ALJ referenced her testimony about use of a cane (*see* Tr. 48), but says he improperly interpreted it. But his finding—"[Plaintiff] reported she uses a cane to get out of bed" (Tr. 28 ¶ 5)—closely tracks her testimony—"I use my cane. I do not, cannot get out of bed in the morning without a cane" (Tr. 47). The ALJ's interpretation does not fall outside the scope of the leeway entitled him as fact finder.

As plaintiff contends, the ALJ did not expressly reference her testimony that a water pill she takes in the morning causes her to use the bathroom 15 times before lunch. *See* Tr. 43. The ALJ found, however, that "there is no evidence that the claimant experiences significant side effects from her medications or that her medications have been frequently changed or the dosages altered due to side effects and/or ineffectiveness." Tr. 28 ¶ 5. Plaintiff points to no medical records reflecting complaints by her regarding frequent bathroom visits. To the contrary, there are records indicating that no such problem existed, such as records of nursing visits to plaintiff's home from 15 May to 10 August 2010 (Tr. 471-86, 765-67, 795-98).

Plaintiff further complains that the ALJ did not expressly mention her testimony that she usually avoided stooping and bent at the knees instead. Tr. 50. The ALJ did, though, appear to consider this complaint because he limited her to only occasional stooping in the RFC determination. Tr. 24 ¶ 5.

Plaintiff also asserts that the ALJ did not consider her testimony that she could not squat for a long time. Tr. 50. While neither the Regulations nor Social Security Rulings define "squat," it is essentially synonymous with "crouch," which is defined in Social Security Ruling 85-15, 1985 WL 56857, at *7 ¶ 2.b (1985) as "bending the body downward and forward by bending both the legs and spine."[8] *See Lawson v. Astrue*, Civ. Act. No. 3:10–212–HFF–JRM 2011 WL 4502026, at *11 (D.S.C. 29 July 2011) (mag. judge's rep. & recommendation) (citing *Chavez v. Astrue*, 699 F. Supp. 2d 1125, 1133 n. 5 (C.D. Cal. 2009)), *adopted*, 2011 WL 4527370 (29 Sep. 2011). That the ALJ considered plaintiff's allegation about this alleged postural limitation is evident from the fact that he limited her to only occasional crouching in the RFC determination. Tr. 24 ¶ 5. In any event, a crouching limitation "has little, if any, impact on

---

[8] The ALJ asked plaintiff about both squatting and crouching, defining the latter as "like a baseball catcher's position." Tr. 51. Notably, as with squatting, she testified that she could not crouch for a long time: "I can't, I can't stay in that position either." Tr. 51.

the sedentary . . . occupational base" because most sedentary jobs do not require crouching. *Lawson*, 2011 WL 4502026, at *11 (citing Soc. Sec. Ruling 83-14, 1983 WL 31254, at *3 (1983) ("[T]o perform substantially all of the exertional requirements of most sedentary . . . jobs, a person would not need to crouch . . . .")).

Lastly, plaintiff points out that the ALJ did not expressly reference her testimony that she could not reach above her head with her left arm. (*See* Tr. 50). It appears, however, that by stating expressly his reliance on Dr. Fox's report the ALJ did consider this complaint since Dr. Fox found her not to have any limitations on reaching. Tr. 25 ¶ 5; 697; *see also* Tr. 195 ¶ 20.a. (showing box for "Reaching" unchecked in plaintiff's 20 July 2010 function report as an ability affected by her condition). The ALJ also noted that no medical source had referred her to occupational therapy, physical therapy, or chiropractic therapy. Tr. 28 ¶ 5. In addition, plaintiff herself did not indicate in her 20 July 2010 function report that she had any limitation on reaching. Tr. 195 ¶ 20.a.

The court concludes that plaintiff has failed to demonstrate that the ALJ did not adequately consider her testimony. The court accordingly rejects this challenge to the ALJ's decision.

### G. ALJ's Evaluation of Plaintiff's Credibility

Plaintiff contends that the ALJ did not properly evaluate the credibility of her allegations of limitations arising from her impairments, which she, of course, contends are disabling. The ALJ found the allegations not to be fully credible. Tr. 25 ¶ 5; 27 ¶ 5. The court finds that the ALJ committed no error.

The ALJ's assessment of a claimant's credibility involves a two-step process. Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2 (2 July 1996); *accord Craig v. Chater*, 76 F.3d 585, 589

(4th Cir. 1996).  First, the ALJ must determine whether plaintiff's medically documented impairments could cause plaintiff's alleged symptoms.  Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2.  Next, the ALJ must evaluate plaintiff's statements concerning those symptoms. *Id.; see also* 20 C.F.R. § 404.1529 (setting out factors in evaluation of a claimant's pain and other symptoms).  If the ALJ does not find plaintiff's statements to be credible, the ALJ must cite "specific reasons" for that finding that are "supported by the evidence."  Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2, 4; *Jonson v. Colvin*, No. 12cv1742, 2013 WL 1314781, at *7 (W.D. Pa. 28 Mar. 2013) ("If an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision."); *accord Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006).

In assessing plaintiff's allegations, the ALJ made the step-one finding that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms."  Tr. 25 ¶ 5.  At the second step of the credibility assessment, the ALJ found that plaintiff's allegations were not fully credible.  Tr. 25 ¶ 5.  He stated that "the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . [RFC] assessment."  Tr. 25 ¶ 5.  He also stated that he "cannot find [plaintiff's] allegation that she was unable to perform all work activity prior to the last date insured to be credible."  Tr. 26 ¶ 5.

The ALJ provided specific reasons for his credibility determination.  Tr. 27 ¶ 5.  He explained that plaintiff's "statements concerning her impairments and their impact on her ability to perform work activities are not fully credible and consistent with her activities of daily living, her medical history, her medication regimen, her work and earnings history, her demeanor at the hearing, and the other evidence in the record."  Tr. 27 ¶ 5.  The ALJ discussed these topics in

detail, and his discussion is well grounded in the evidence of record.  *See* re activities of daily living: Tr., *e.g.*, 23 ¶¶ 4; 27-28 ¶ 5; re medical history: Tr., *e.g.*, 26 ¶ 5; re medication regimen: Tr. 28 ¶ 5; re work and earnings history: Tr. 28 ¶ 6; re demeanor at the hearing: Tr. 23 ¶ 4; 24 ¶ 4; re other evidence in the record: Tr. 25 ¶ 5 (Dr. Fox's opinion); 27 ¶ 5 (same).

Plaintiff concedes that the ALJ was "'procedurally' correct" in that he did consider the factors bearing on credibility indentified in Soc. Sec. Ruling 96-7p.  (Pl.'s Mem. 9).  She argues, though, that the ALJ did not properly evaluate several of these factors.

One such factor is plaintiff's activities of daily living.  The ALJ found that she enjoyed "a wide range of activities of daily living including living in a house with family, caring for her personal needs independently, using public transportation, driving a car, paying bills, counting change, managing depository accounts, watching television, working on the computer, attending church, doing the books for the church and other work, cleaning, doing laundry, cooking, shopping, and doing dishes (Exhibit[] 4E)."  Tr. 27 ¶ 5.  After mentioning notes of home nursing visits, the ALJ concluded that plaintiff's activities of daily living are "consistent with an individual who is capable of performing substantial gainful activity and who retains the ability to perform simple, repetitive, routine (i.e. unskilled) job tasks" and "inconsistent with an individual who is experiencing debilitating symptoms and who is not able to perform work at the above-stated residual functional capacity."  Tr. 27 ¶ 5.

Plaintiff contends that in making this finding the ALJ overstated her activities of daily living as set out in her 20 July 2010 function report (Exhibit 4E, Tr. 190-204).  But plaintiff relies on selected portions of this report.  Other portions of it explicitly substantiate plaintiff's activities of daily living as found by the ALJ, with the exception of two activities—using public

transcription and church work.[9]  As to using public transportation, plaintiff left unchecked the box for it in the report form, although she did indicate that she could ride in a car, which would presumably include a taxi.  *See* Tr. 193 ¶ 15.b.  In any event, since plaintiff apparently has access to a car (*see* Tr. 59), there is no indication that her ability to use public transportation is material.  The other activity—doing books and other work for the church—was discussed by plaintiff at the hearing.  Tr. 55.  She, of course, also spoke of additional activities of daily living at the hearing.  Tr., *e.g.*, 40-41 (driving), 53 (cleaning dishes, other cleaning, laundry).  The court concludes that the ALJ's analysis of plaintiff's activities of daily living is supported by substantial evidence.

> In evaluating plaintiff's treatment regimen, the ALJ found:

> In terms of treatment, the claimant reported she takes the medications a[s] set forth in Exhibits 2E, 6E and 7E in the dosages indicated.  However, there is no evidence that the claimant experiences significant side effects from her medications or that her medications have been frequently changed or the dosages altered due to side effects and/or ineffectiveness.  Likewise, there is no evidence the claimant has been prescribed other pain/treatment modalities such as a Tens unit, back brace, bed board, cervical collar, or an assistive device for ambulation although the claimant reported she uses a cane to get out of bed; and no medical source of record has referred the claimant to a pain management clinic, occupational therapy, physical therapy, chiropractic therapy, or aqua therapy notwithstanding her allegations of chronic pain.  Furthermore, evidence does not show the claimant has ever had a psychiatric hospitalization or has ever attended or been referred to a partial hospitalization program or ever resided in a halfway house or in another highly supportive living arrangement or experiences suicidal/homicidal ideations, psychosis, hallucinations, or delusions.  Finally, it is noted that the claimant has not required aggressive medical treatment, frequent hospital confinement or emergency room care, or surgical intervention for her conditions notwithstanding her allegations of totally debilitating symptomatology.  Therefore, the Administrative Law Judge finds this treatment history inconsistent with an individual who is experiencing debilitating symptoms.

Tr. 28 ¶ 5.

---

[9] Living in a house with family (Tr. 190 ¶ 5.a, b); caring for personal needs independently (Tr. 191 ¶ 12); driving a car (Tr. 193 ¶ 15.b); paying bills (Tr. 193 ¶ 17.a);  counting change (Tr. 193 ¶ 17.a); managing depository accounts (Tr. 193 ¶ 17.a); watching television (Tr. 194 ¶ 18.b); working on the computer (Tr. 193 ¶ 17.a); attending church (Tr. 194 ¶ 19.b); cleaning (Tr. 190 ¶ 6; 192 ¶ 14.a, b); doing laundry (Tr. 190 ¶ 6; 192 ¶ 14.a, b); cooking (Tr. 190 ¶ 6; 192 ¶ 13.a); shopping (Tr. 193 ¶ 16.a-c); doing dishes (Tr. 192 ¶ 14.a).

Plaintiff challenges this finding, in part, on the grounds that the ALJ did not explicitly mention: two of her pain medications, Vicodin and Percocet; another medication, Effexor, as a medication for depression (the decision does mention Effexor as a medication for headaches (*see* Tr. 27 ¶ 5)); and her use of an albuterol inhaler. But the ALJ did explicitly state plaintiff "reported she takes the medications a[s] set forth in Exhibits 2E, 6E, and 7E in the dosages indicated," and Exhibits 2E and 6E list Vicodin and Effexor (as a depression medication) among her medications. Tr. 172, 210. While not included in these exhibits, Percocet is mentioned in an exhibit cited by the ALJ in his credibility analysis, Exhibit 25F (Tr. 773).[10] *See* Tr. 27 ¶ 5. Elsewhere in his decision, the ALJ cites numerous other exhibits referencing Percocet. *See* Tr., *e.g.*, 23 ¶ 4 (citing Ex. 4E (Tr. 199)); 24 ¶ 4 (same); 25 ¶ 5 (same); 26 ¶ 5 (citing Exs. 7F (Tr. 352), 8F (Tr. 415), 19F (Tr. 597, 600), 21F (Tr. 691)); 27 ¶ 5(citing Exs. 4E (Tr. 199), 24F (Tr. 717), 25F (Tr. 773)). One of these exhibits, Ex. 19F (Tr. 599), also mentions plaintiff's inhaler. Since the decision must be read as a whole, it is reasonable to conclude that the ALJ considered Percocet and the inhaler when conducting his credibility analysis. *See, e.g., Jones v. Barnhart*, 364 F.3d 501, 504–05 (3d Cir. 2004); *Jones v. Astrue*, No. 11–4379 (JLL), 2012 WL 5451528, at *4 (D.N.J. 5 Nov. 2012) ("The Third Circuit has specifically 'noted that an ALJ is not required to use particular language or adhere to a particular format in conducting [her] analysis' as long as the decision 'read as a whole' is 'capable of providing meaningful judicial review.'" (quoting *White v. Comm'r of Soc. Sec.*, No. 10–506, 2011 WL 463058, at *9 (D.N.J. 3 Feb. 2011)); *accord Smith v. Astrue*, No. 11-1574, 2011 WL 6188731, at *1 (4th Cir. 14 Dec. 2011); *Finley v. Astrue*, No. 5:08–CV–209–D(1), 2009 WL 2489264, at *5 (E.D.N.C. 8 Jul. 2009) (mag. judge's mem. & recommendation) ("[T]he ALJ's decision may appropriately be read 'as a whole.'"

---

[10] The same page of that exhibit contains a pain evaluation plaintiff complains the ALJ did not mention expressly.

(quoting *Jones v. Barnhart*, 364 F.3d at 504–05)), *accepted,* 2009 WL 2489264, at *1 (13 Aug. 2009).

Irrespective of the foregoing considerations, a central point made by the ALJ is that the medical evidence does not show that the various medications plaintiff takes are ineffective, at least not to a significant degree. "'If a symptom can be reasonably controlled by medication or treatment, it is not disabling.'" *See Dearth v. Barnhart*, 34 Fed. Appx. 874, 875 (3d Cir. 2002) (quoting *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir.1986)); *Pounds v. Astrue,* 772 F. Supp. 2d 713, 723 n.21 (W.D. Pa. 2011) ("[S]ymptoms which are reasonably controlled by medication are not disabling." (citing *Dearth*, 34 Fed. Appx. at 875)); *Duganne v. Astrue*, No. 07–329J, 2009 WL 734715, at *3 (W.D. Pa. 19 Mar. 2009) ("It is well-established that an impairment which can be controlled by medication or treatment cannot be considered disabling.").

Plaintiff also contends that the ALJ erred in his finding that she "has not required aggressive medical treatment, frequent hospital confinement or emergency room care, or surgical intervention for her conditions notwithstanding her allegations of totally disabling symptomatology." Tr. 28 ¶ 5. She cites to her four hospitalizations between April and December 2010 and her certification for home care from 14 May to 9 September 2010. As the ALJ's decision makes clear, however, he determined that the hospital records before him did not show the conditions for which plaintiff was hospitalized to be disabling. Further, of course, the hospitalizations spanned only eight months, whereas to be deemed disabling an impairment must last or be expected to last 12 months (if not otherwise meeting a listing). *See* 20 C.F.R. § 404.1509. With respect to home care, the ALJ found, as referenced above, that the home care notes showed that plaintiff was capable of a range of activities of daily living, not that she was disabled. Tr. 27 ¶ 5. And although plaintiff alleges that the ALJ did not consider her testimony

that a team of cardiologists was in the process of deciding whether to perform surgery to close the hole in her heart (*i.e.*, PFO) (*see* Tr. 44), the ALJ expressly discussed the 7 October 2010 opinion of examining cardiologist David M. Lasorda, O.D., F.A.C.C. (Tr. 801) that surgical closure (*i.e.*, percutaneous closure) of the PFO was not indicated (Tr. 26 ¶ 5).

While not fully crediting plaintiff's testimony, it is apparent that, as the ALJ said, he did give it some weight. He states expressly that he found credible her hearing testimony regarding her depression, as discussed further below. *See* Tr. 27 ¶ 5. The ALJ's RFC determination reflects this and other limitations about which plaintiff complained. Indeed, as noted, although Dr. Fox found plaintiff able to perform work at the light exertional level and the ALJ relied heavily on Dr. Fox's opinions, the ALJ found plaintiff capable of work at only the sedentary exertional level.

The court concludes that the ALJ's determination of plaintiff's credibility is supported by substantial evidence and conforms to the applicable legal standards. Plaintiff's challenge to it is therefore meritless.

### H.     ALJ's Assessment of Plaintiff's Mental Impairments

 Social Security Ruling 96–8p provides that the "RFC assessment must . . . assess [the claimant's] work-related abilities on a function-by-function basis." Soc. Sec. Ruling 96–8p, 1996 WL 374184, at *1 (2 July 1996); *see also* 20 C.F.R. § 404.1545(b)-(d). The functions to be considered include mental abilities, such as "limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting." 20 C.F.R. § 404.1545(c). This function-by-function analysis, used at steps four and five of the sequential analysis, follows application of the special technique for mental impairments employed at steps two and three, which focuses on the four broad functional

areas, or the so-called "Paragraph B criteria," of activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *See* 20 C.F.R. § 404.1520a. Here, plaintiff contends that the ALJ did not carry out the required function-by-function analysis of her mental impairments, citing in particular his omission of a discussion of each of the 20 functions included in the Mental RFC Assessment form. The court finds no error.

Contrary to the suggestion of plaintiff, while Social Security Ruling 96-8p requires that an ALJ evaluate a claimant's RFC on a function-by-function basis, it does not require that the ALJ discuss each function in his decision. The ruling states in detail what must be included in the ALJ's narrative discussion of the RFC assessment. Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *7. There simply is no requirement that an analysis of each function be included. The court will not impose one. *See, e.g.*, *Hanson v. Social Sec. Admin. Com'r*, No. 1:11–cv– 00008–DBH, 2011 WL 6888642, at *2 (D. Me. 28 Dec. 2011) (mag. judge's rep. & recommendation), *aff'd*, 2012 WL 423917 (9 Feb. 2012), *aff'd*, 2013 WL 1458729 (1st Cir. 11 Apr. 2013); *Carway v. Astrue*, No. 06 Civ. 13090(RO), 2011 WL 924215, at *3 (S.D.N.Y. 16 Mar. 2011); *accord Floyd v. Astrue*, Civ. No. 3:10CV474–FDW–DSC, 2011 WL 4946311, at *2 (W.D.N.C. 6 June 2011) (mag. judge's rep. & recommendation) (finding ALJ complied with function-by-function analysis requirement of Soc. Sec. Ruling 96-8p although he did not discuss every function associated with work-related activities) (citing precedent from the Seventh, Eighth, and Ninth Circuits), *adopted*, 2011 WL 4946270 (18 Oct. 2011).

The court finds that the ALJ's assessment of plaintiff's mental impairments was proper. In applying the special technique, the ALJ determined that plaintiff had mild limitations in activities of daily living; no limitations in social functioning; moderate limitations in concentration, persistence, or pace; and no episodes of decompensation. Tr. 23-24 ¶ 4. He made

detailed findings supporting these determinations, drawing on the medical evidence, including the opinions of the consulting psychological expert; statements by plaintiff; and his own observations of plaintiff during the hearing.

> Relevant to plaintiff's concentration, persistence, or pace, the ALJ found:
>
> The claimant reported she is able to care for her personal needs independently, watch television, use the internet, drive a car and perform various household chores such as cleaning, dish washing, sweeping, doing laundry, and shopping (Exhibit 4E and Testimony).
> . . . .
> The claimant's self-reported activities of daily living discussed above are consistent with an individual who is capable of performing substantial gainful activity and who retains the ability to perform simple, repetitive, routine (i.e. unskilled) job tasks. Also, the claimant reported she can count change, pay bills, manage a saving and checking account, shop, drive a car, and handle written instructions well; but she has trouble remembering verbal instructions without repetition, she can pay attention for 3-5 minutes, she does not usually finish what she starts, and she does not handle changes in routine and stress well (Exhibit 4E). Furthermore, the state agency mental health consultant opined the claimant did not have more than mild limitation in this area of functioning (Exhibits 23F). Finally, the undersigned notes the claimant was able to remember names and other information at the hearing and did not display any overt problems with attention or concentration.

Tr. 23-24 ¶ 4.

> The ALJ made further findings relating to plaintiff's mental impairments in determining plaintiff's RFC. He reviewed the 1 September 2010 psychiatric review technique form completed by nonexamining consulting psychologist James Vizza, Psy.D. (Tr. 702-14) as well as relevant records from treating and examining sources:

> The State agency psychological expert reported in September 2010 that the claimant was diagnosed with depression in 2009 and that she was prescribed Effexor for treatment of headache and the expert opined the claimant's depression was a non-severe impairment (Exhibit 23F). Also, progress notes from treating and examining sources, including home nursing notes, do not contain any references to depression or functional limitations due to same, but usually reveal the claimant is alert and oriented, and not exhibiting depressive symptoms (Exhibits 8F, 14F, 15F, 20F, 24F and 25F).
> . . . .

Furthermore, evidence does not show the claimant has ever had a psychiatric hospitalization or has ever attended or been referred to a partial hospitalization program or ever resided in a halfway house or in another highly supportive living arrangement or experiences suicidal/homicidal ideations, psychosis, hallucinations, or delusions.

Tr. 27 ¶ 5; 28 ¶ 5.

The ALJ also considered plaintiff's testimony about her depression and found it credible, and adopted corresponding restrictions in his RFC determination:

[T]he claimant alleged depression as mental condition limiting the claimant's ability to work and she testified credibly at the hearing; therefore, the Administrative Law Judge [is] inclined to give the claimant the benefit of the doubt and has made accommodations for this impairment in the [RFC].

Tr. 27 ¶ 5. The limitations the ALJ included were restriction of plaintiff to simple, routine, repetitive tasks and to simple work-related decisions. Tr. 24-25 ¶ 5.

The court finds that the ALJ adequately performed a function-by-function analysis of plaintiff's mental impairments that is supported by substantial evidence and based on the proper legal standards. The court accordingly rejects plaintiff's challenge to this portion of the ALJ's decision.

## I.    ALJ's Hypothetical to the VE

Plaintiff argues that the ALJ erred in relying on the testimony of the VE because the hypothetical he posed to the VE did not include all of plaintiff's limitations. This contention has no merit.

"Hypothetical questions posed to a VE must include all of a claimant's impairments that are supported by the record for the VE's answer to be considered substantial evidence." *Drogus v. Colvin*, No. 12–643, 2013 WL 1654809, at *4 (W.D. Pa. 16 Apr. 2013) (citing *Ramirez v. Barnhart*, 372 F.3d 546, 552 (3d Cir. 2004)); *see also Cuevas v. Astrue*, No. 12–4644, 2013 WL 1932933, at *5 (D.N.J. 8 May 2013) ("The ALJ's hypothetical must reflect all of the claimant's

impairments that are supported by the record.”); *accord Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005) (holding that a hypothetical question is proper if it adequately reflects a claimant’s RFC for which the ALJ had sufficient evidence); *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (holding that to be helpful, the VE’s opinion must be “in response to proper hypothetical questions which fairly set out all of [a] claimant’s impairments”).

In this case, the hypothetical presented to the VE by the ALJ did adequately reflect the plaintiff’s RFC as determined by the ALJ. *See* Tr. 68-69. Nevertheless, plaintiff complains that the hypothetical should have included the limitations that she needed to use the bathroom 15 times before lunch after taking her medication for excess fluid; uses oxygen 24 hours a day for shortness of breath; and cannot reach over her head with her left arm. The court finds no error.

With respect to plaintiff’s alleged need for frequent bathroom use, as the court previously discussed, the ALJ’s determination not to credit that allegation was lawful. The ALJ therefore properly excluded it from the hypothetical to the VE.

As also previously discussed, the ALJ properly accounted for plaintiff’s shortness of breath in his RFC determination. He was not required to mention it specifically in the hypothetical to the VE.

As to plaintiff’s alleged inability to reach with her left arm, the ALJ properly excluded such a limitation from his RFC determination and thereby also from the hypothetical to the VE. The substantial evidence supporting the ALJ’s exclusion of this alleged limitation from the hypothetical includes, as the ALJ noted, the finding by Dr. Fox that she did not have any limitation in her ability to reach and the absence of any referral of plaintiff by a medical source to occupational therapy, physical therapy, or chiropractic therapy. Tr. 25 ¶ 5; 28 ¶ 5. In

addition, plaintiff herself did not indicate in her 20 July 2010 function report that she had any limitation on reaching. Tr. 195 ¶ 20.a.

The court concludes that the ALJ's hypothetical to the VE is supported by substantial evidence and based on the applicable legal standard. The court accordingly rejects this final challenge to the ALJ's decision.

## III. CONCLUSION

For the foregoing reasons, the final decision of the Commissioner is supported by substantial evidence and conforms to the applicable legal standards. IT IS THEREFORE RECOMMENDED that the Commissioner's motion for judgment on the pleadings (D.E. 25) be ALLOWED, plaintiff's motion for judgment on the pleadings (D.E. 23) be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have 14 days to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections must be filed within 14 days after service of the objections on the responding party.

This, the 5th day of June 2013.

James E. Gates
United States Magistrate Judge